UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| TYRONE WILLIAM MAHAN, | CASE NO. 2:22-cv-10489 |
| *Plaintiff*, | |
| v. | HON. GEORGE CARAM STEEH DISTRICT JUDGE |
| NOAH NAGY, ET AL., | HON. PATRICIA T. MORRIS MAGISTRATE JUDGE |
| *Defendants*. | |
| _____/ | |

**REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER (ECF No. 19)**

**I.   RECOMMENDATION**

For the following reasons, **I RECOMMEND** that this Court **DENY** Plaintiff Tyrone William Mahan's ("Plaintiff's") motion for a Temporary Restraining Order ("TRO"). (ECF No. 19).

**II.   REPORT**

**A.   Procedural and Factual Background**

Plaintiff is a prison inmate in the custody of the Michigan Department of Corrections ("MDOC") at the G. Robert Cotton Correctional Facility ("JCF") in Jackson, Michigan. He alleges Eighth Amendment violations and retaliation in violation of the First Amendment by various prison officials stemming from his quarantine placement in January 2021 following "close contact" with another prisoner testing positive for COVID-19. (ECF No. 1, PageID.8).

1

On March 28, 2022, the District Court summarily dismissed the following Defendants under 28 U.S.C. §§ 1997e(c), 1915(e)(2), and 1915A(b): Thomas Cobb; Timothy Schubring; Sirena Landfair, Health Unit Manager ("HUM"); Austin, Hearing Investigator; C. Young, Assistant Resident Unit Supervisor ("ARUS"); C. McCumber-Henry; Jimmy Jarrett, Deputy Warden, Tiffani Kisor, Assistant Deputy Warden ("ADW"); Stevenson, Correctional Officer ("CO"); and Brian Nichelson, CO. (ECF No. 7, PageID.42).

The Court declined to dismiss the following Defendants: N. Nagy, Warden of JCF; S. Bailey, Deputy Warden; J. White, ADW; R. Ruka, ADW; K. Austin, NP; N. Stokley-Hamdan, NP; Lt. Root, CO; Sgt. Haskett, CO; Sgt. Ferguson, CO; Officer Holzchu, CO; Joshua Buskirk, PA-C; Heidi Washington, Director of the MDOC; Carmen McIntyre, Chief Medical Officer ("CMO"); and Carmen Bussell. (*Id*., PageID.42-43).

On April 15, 2022, Magistrate Judge Kimberly G. Altman ordered the case excluded from the pro se prisoner mediation program because Defendants K. Austin and N. Stokley-Hamdan, through their employer Corizon Health, declined to engage in mediation. (ECF No. 10, PageID.50).

The Complaint contains the following factual allegations.

On January 1, 2021, after coming into "close contact" with a prisoner testing positive for COVID-19, Plaintiff was taken from his level 1 security unit and placed in quarantine among prisoners from levels 2 to 4 security units. (ECF No. 1, PageID.8). Although Plaintiff tested negative for the virus the next day, he was forced to stay in the quarantine unit. (*Id*.). Plaintiff asked Defendant Nagy for a transfer out of the unit, to

2

which Nagy responded that "his hands [were] tied" by a state policy implemented by Defendants McIntyre and Buskirk. (*Id*.). Plaintiff alleges that Defendant Baily was aware of the substantial risk to Plaintiff but failed to take reasonable measures to avoid risk. (*Id*.). Defendant White also failed to intervene on Plaintiff's behalf, stating that the requested transfer would need to be cleared by Defendant Bussell. (*Id*.). Defendant Rurka was also aware of and disregarded the substantial risk to Plaintiff and instead of alleviating the risk, told subordinate employees "to har[]ass, threaten, and falsely accuse [Plaintiff] of all types of misconducts" in retaliation for complaining about the quarantine placement. (*Id*.). Defendant Austin was not only aware that Plaintiff faced a substantial risk of serious harm, but also administered an "immune weakening medication" placing Plaintiff "at highest risk" of contracting COVID-19. (*Id*.) Defendant Stokley-Hamdan also failed to take reasonable measures to protect Plaintiff from harm. (*Id*., PageID.9). Although Defendant Root acknowledged complaints from inmates protesting their placement in the quarantine unit, he did nothing to avert the risk. (*Id*.). Defendants Haskett, Ferguson, and Holzchu likewise failed to avert the risks to Plaintiff. (*Id*.). Defendants Washington and McIntyre "knew or should have known" that Plaintiff faced a substantial risk of serious harm but disregarded the risk. (*Id*.)

Plaintiff alleges that as a result of being required to share the same living quarters with "covid positive inmates," he suffered "emotional, mental and physical harm," including becoming "obese from a[n] eating disorder, hair loss from stress, [and] thoughts of suicide." (*Id*., PageID.11). He alleges that he later "caught the virus and refused

3

treatment,"[1] adding that he experienced "breathing issue[s] and body pains from complications of the virus. (*Id.*, PageID.12). He claims that he has been "mistreated, harassed, [and] threaten[ed] [with] continued incarceration. . ." (*Id.*). He requests monetary damages and costs.

    **B.    Applicable Law**

The moving party carries the burden of proving that he or she is entitled to a preliminary injunction or a TRO. *Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 2009). Because preliminary injunctive relief is an "extraordinary remedy," courts are hesitant to grant preliminary injunctive relief and will only do so if an injunction is "clearly" warranted. *Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). Moreover, given the "unique nature of a prison setting," where a prisoner moves to enjoin "prison officials, the court is required to proceed with the utmost care and must recognize the unique nature of the prison setting." *Sango v. Wakley*, No. 1:14-cv-703, 2014 WL 3894652, at *2 (W.D. Mich. Aug. 8, 2014) (citing *Glover v. Johnson*, 855 F.2d 277, 284 (6th Cir.1988)).

When considering whether to issue preliminary injunctive relief, a court must balance the following four factors:

> (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction.

---

[1] It is unclear whether after catching the virus, Plaintiff "refused treatment," or was "refused treatment" by medical staff. (ECF No. 1, PageID.11).

*Bays v. City of Fairborn*, 668 F.3d 814, 818–19 (6th Cir. 2012). No one factor is controlling, and except for the movant's risk of irreparable injury, no single factor is required to obtain injunctive relief. *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 102–03 (6th Cir. 1982) (citing *Sampson v. Murray*, 415 U.S. 61, 88 (1974)). Instead, these factors must be "carefully balanced" by the district court. *Frisch's Rest., Inc. v. Shoney's Inc.*, 759 F.2d 1261 1263 (6th Cir. 1985). Further, although a movant with "no likelihood of success on the merits" generally cannot obtain injunctive relief, a movant need not show an "overwhelming" probability of success on the merits. *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. Aug. 22, 2000); *Sellers v. U. of Rio Grande*, 838 F. Supp.2d 677, 679 (S.D. Ohio 2012).

### C.  The Request for a TRO

Plaintiff asks that Defendants be enjoined from the following acts:

> Harassing [P]laintiff, transfer to other prison or custody level, excessive room searches (more than same situated inmates), delaying plaintiff['s] serious medical needs, destroying legal material, threats of violence, stop retaliatory acts or the appearance of, unlawful censorship of mail that is legal, falsifying documents and misconducts, obstructing preparation for this claim[,] tampering with witnesses, violating constitutional rights, prohibit defendants from liquidating asset or willing/gifting them away.

(ECF No. 19, PageID.124).[2] He alleges that "these action[s] being done to [him] shows immediate and irreparable injury, loss or damage or physical injury." (*Id.*).

---

[2] Corrected for spelling errors only.

The Court need not consider Plaintiff's ultimate likelihood of success on the merits of his claim because his failure to demonstrate irreparable harm in the absence of a TRO, by itself, warrants denial of the present motion. "An irreparable harm is an extraordinary harm that cannot be properly compensated by money damages. *Norris v. Stanley*, No. 1:21-CV-756, 2021 WL 4738827, at *4 (W.D. Mich. Oct. 8, 2021), *appeal dismissed,* No. 21-1705, 2021 WL 6803021 (6th Cir. Nov. 24, 2021) (citing *Winter v. NRDC*, 555 U.S. 7, 22, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008)). Plaintiff has not stated how he would be irreparably harmed if he were transferred to another facility. In other words, he could be compensated for the inconvenience of an improper transfer if he prevails on the merits of the case. Likewise, while he seeks to enjoin Defendants from "excessive" room searches, he does not state how the allegedly improper number of searches would constitute irreparable harm.

The exhibits attached to the present motion do not show that the Court should enjoin Defendants from destroying Plaintiff's legal materials; threatening him with violence; censoring his mail; falsifying misconduct reports and other documents; obstructing his preparation of the current case; or tampering with witnesses. To the contrary, documents attached to the motion indicate that Plaintiff was ticketed for legitimate, non-retaliatory reasons: making phone calls in violation of a call restriction, (ECF No. 19, PageID.135-136) ("72 calls made in total while this inmate was on sanctions and not a single one was to an attorney"); refusing a direct order to wear a mask (*Id.*, PageID.137-138) (Plaintiff "continued through the entire chow hall without having a

6

mask" despite order to don a mask);  Plaintiff refused to provide a urine sample after showing signs of intoxication (*Id.*, PageID.142-143) (refused required use of hand sanitizer required before handling sample cup, thus preventing officer from obtaining aurine sample).  An investigation made after Plaintiff accused an officer of "trashing" his legal documents revealed "no evidence" to support the claims.  (*Id.*, PageID.152-154).

Plaintiff has not shown that he is not receiving adequate medical care, much less risk of an irreparable injury.  In January 2021, he was seen by medical staff after complaining of chronic pain at the site of a tetanus shot administered five months earlier. (*Id.*, PageID.147).  December 2021 records show that Plaintiff received an MRI scan of the brain earlier in the year and was offered but refused antibiotics for the condition of mastoiditis, (a treatable infection affecting the bone behind the ear) insisting instead on an updated imaging study.  (*Id.*, PageID.146).  "To merit a preliminary injunction, an injury must be both certain and immediate, not speculative or theoretical." *Memphis A. Philip Randolph Inst. v. Hargett*, 978 F.3d 378, 391 (6th Cir. 2020) (internal citations omitted).  Plaintiff's claims of irreparable harm are at best speculative.

With respect to the final two prongs of this inquiry—whether granting Plaintiff's motion would cause substantial harm to others, and whether it is in the public interest—I note that principles of federalism and the separation of powers discourage "entanglement" in prison administration absent "a strong constitutional claim," *Rhinehart v. Scutt*, 509 Fed.Appx. 510, 512-13 (6th Cir. 2013) (internal quotation and quotation marks omitted); *cf. Sango v. Harpst*, No. 08-12709, 2009 WL 365947, at *2 (E.D. Mich.

7

Feb. 11, 2009) ("[F]or this Court to interfere with the operation of the state's prison facilities on the facts of this case would cause substantial harm to others") (citing *Kendrick v. Bland*, 740 F.2d 432, 438 & n.3 (6th Cir. 1984) (courts are ill-equipped to deal with problems of prison administration and reform)); *See also Jackson v. Coronado*, No. 2:18-CV-00019, 2020 WL 4043650, at *2 (W.D. Mich. June 16, 2020), *report and recommendation adopted,* No. 2:18-CV-19, 2020 WL 4039105 (W.D. Mich. July 17, 2020) (quoting *Meachum v. Fano*, 427 U.S. 215, 229 (1976)) (While the plaintiff "invites this Court to become involved in prisoner placement . . . . '[t]he federal courts do not sit to supervise state prisons, the administration of which is of acute interest to the States.'"). Enjoining Defendants from transferring prisoners, conducting discretionary cell searches, and using independent judgment in administering medical treatment would cause substantial harm, particularly here where Plaintiff has not demonstrated that these practices have been abused. As to the fourth prong, he furnishes no rationale as to how his proposed relief would benefit the public. Accordingly, his motion for injunctive relief should not be granted.

### D. Conclusion

For the reasons discussed above, **I RECOMMEND** that this Court **DENY** Plaintiff Tyrone William Mahan's motion for a Temporary Restraining Order. (ECF No. 19).

## III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may

respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this R&R. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this R&R to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: May 2, 2022                                S/ PATRICIA T. MORRIS
Patricia T. Morris
United States Magistrate Judge