UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| TYRONE WILLIAM MAHAN, | CASE NO. 2:22-cv-10489 |
| *Plaintiff*, | HON. GORGE CARAM STEEH |
| v. | DISTRICT JUDGE |
| N. NAGY Warden; S. BAILEY, Deputy Warden; J. WHITE ADW; R. RURKA A/ADW; K. AUSTIN NP; N. STOKLEY-HAMDAN NP; Lt. ROOT; Sgt HASKETT; Sgt. FERGUSON; HULZCHU *Unit Officer*; JOSHUA BUSKIRK PA-C; Director HEIDI WASHINGTON, CARMEN MCINTYRE CMO, and CARMEN BUSSELL, BHCS, | HON. PATRICIA T. MORRIS MAGISTRATE JUDGE |
| *Defendants*. | |
| _____/ | |

## REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION FOR DISMISSAL (ECF No. 39)

**I.   RECOMMENDATION**

For the following reasons, **I RECOMMEND** that this Court **GRANT** Defendants Heidi Washington, Noah Nagy, Scott Bailey, Jeffrey White, Russ Rurka, Nathan Root, Michael Heskett, Billy Ferguson, and Andrew Hulzschu's Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), dismissing these Defendants **WITH PREJUDICE**. (ECF No. 39). If the Recommendation is adopted, the remaining Defendants would be Austin, Stokley-Hamdan, Buskirk, McIntyre and Bussell.

## II.   REPORT

### A.   Procedural and Factual Background

Plaintiff is a prison inmate in the custody of the Michigan Department of Corrections ("MDOC") at the G. Robert Cotton Correctional Facility ("JCF") in Jackson, Michigan. He alleges Eighth Amendment violations and retaliation in violation of the First Amendment by various prison officials stemming from his quarantine placement in January 2021 following "close contact" with another prisoner testing positive for COVID-19. (ECF No. 1, PageID.8).

On March 28, 2022, the District Court summarily dismissed the following Defendants under 28 U.S.C. §§ 1997e(c), 1915(e)(2), and 1915A(b): Thomas Cobb; Timothy Schubring; Sirena Landfair, Health Unit Manager ("HUM"); Austin, Hearing Investigator; C. Young, Assistant Resident Unit Supervisor ("ARUS"); C. McCumber-Henry; Jimmy Jarrett, Deputy Warden, Tiffani Kisor, Assistant Deputy Warden ("ADW"); Stevenson, Correctional Officer ("CO"); and Brian Nichelson, CO. (ECF No. 7, PageID.42).

The Court declined to dismiss the following Defendants: N. Nagy, Warden of JCF; S. Bailey, Deputy Warden; J. White, ADW; R. Rurka, ADW; K. Austin, NP; N. Stokley-Hamdan, NP; Lt. Root, CO; Sgt. Haskett, CO; Sgt. Ferguson, CO; Officer Holzchu, CO; Joshua Buskirk, PA-C; Heidi Washington, Director of the MDOC; Carmen McIntyre, Chief Medical Officer ("CMO"); and Carmen Bussell. (*Id*., PageID.42-43).

On April 15, 2022, Magistrate Judge Kimberly G. Altman ordered the case excluded from the pro se prisoner mediation program because Defendants K. Austin and N. Stokley-

Hamdan, through their employer Corizon Health, declined to engage in mediation. (ECF No. 10, PageID.50). On July 13, 2022, the District Court adopted my recommendation to deny Plaintiff's motion for a temporary restraining order ("TRO"). (ECF Nos. 19, 22, 44).

The Complaint contains the following factual allegations.

On January 1, 2021, after coming into "close contact" with a prisoner testing positive for COVID-19, Plaintiff was taken from his level 1 security unit and placed in quarantine among prisoners from levels 2 to 4 security units. (ECF No. 1, PageID.8). Although Plaintiff tested negative for the virus the next day, he was forced to stay in the quarantine unit. (*Id.*). Plaintiff asked Defendant Nagy for a transfer out of the unit, to which Nagy responded that "his hands [were] tied" by a state policy implemented by Defendants McIntyre and Buskirk. (*Id.*). Plaintiff alleges that Defendant Baily was aware of the substantial risk to Plaintiff but failed to take reasonable measures to avoid risk. (*Id.*). Defendant White also failed to intervene on Plaintiff's behalf, stating that the requested transfer would need to be cleared by Defendant Bussell. (*Id.*). Defendant Rurka was also aware of and disregarded the substantial risk to Plaintiff and instead of alleviating the risk, told subordinate employees "to har[]ass, threaten, and falsely accuse [Plaintiff] of all types of misconducts" in retaliation for complaining about the quarantine placement. (*Id.*). Defendant Austin was not only aware that Plaintiff faced a substantial risk of serious harm, but also administered an "immune weakening medication" placing Plaintiff "at highest risk" of contracting COVID-19. (*Id.*). Defendant Stokley-Hamdan also failed to take reasonable measures to protect Plaintiff from harm. (*Id.*, PageID.9). Although Defendant Root acknowledged complaints from inmates protesting their placement in the quarantine

unit, he did nothing to avert the risk. (*Id*.). Defendants Haskett, Ferguson, and Holzchu likewise failed to avert the risks to Plaintiff. (*Id*.). Defendants Washington and McIntyre "knew or should have known" that Plaintiff faced a substantial risk of serious harm but disregarded the risk. (*Id*.).

Plaintiff alleges that as a result of being required to share the same living quarters with "covid positive inmates," he suffered "emotional, mental and physical harm," including becoming "obese from a[n] eating disorder, hair loss from stress, [and] thoughts of suicide." (*Id*., PageID.11). He alleges that he later "caught the virus and refused treatment,"[1] adding that he experienced "breathing issue[s] and body pains from complications of the virus. (*Id*., PageID.12). He claims that he has been "mistreated, harassed, [and] threaten[ed] [with] continued incarceration. . ." (*Id*.). He requests monetary damages and costs.

### B. Standard of Review

Under Rule 12(b)(6), a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). Accordingly, a plaintiff's complaint shall be dismissed for failure to state a claim if it lacks sufficient "factual matter (taken as true) to" provide "plausible grounds to infer" that the elements of a claim for relief could be met. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *see* Fed. R. Civ. P. 12(b)(6). A complaint must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Mere labels, conclusory statements, or

---

[1] It is unclear whether Plaintiff "refused treatment," or whether medical staff refused to treat Plaintiff. (ECF No. 1, PageID.11).

"formulaic recitations" of the elements of a cause of action are not sufficient to meet this burden if they are unsupported by adequate factual allegations. *Id*. (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The requirement to provide a plausible claim does not require that a claim be "probable"; however, a claim must be more than merely "conceivable." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–80 (2009).

Because Plaintiff filed his complaint pro se, his pleadings are liberally construed. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). However, even pro se complaints must satisfy basic pleading requirements. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

C. ANALYSIS[2]

1. **The Official Capacity Claims**

Plaintiff sues the Defendants in both their official and personal capacities.[3]

They argue first that under they are entitled to absolute immunity from the claims for monetary damages brought against them in their official capacity. (ECF No. 39, PageID.354). In response, Plaintiff contends that he also requests "prospective and

---

[2] On April 14, 2022, Plaintiff filed a motion for leave to file an amended complaint. (ECF No. 16). The motion lists proposed additional defendants, including some of the individuals dismissed on initial screening. (*Id.* at PageID.70-72). It does not contain allegations against the current Defendants. On May 9, 2022, the undersigned denied the motion as moot, noting that Defendants had not yet been served and thus, Plaintiff could "amend of right without leave of court." (ECF No. 23, PageID.169); Fed. R. Civ. P. 15(a)(1). Plaintiff was also cautioned that should he file an amended complaint, the amended version would then serve as the sole operative complaint. (ECF No. 23, PageID.169). As of this date, Plaintiff has not filed an amended complaint and the time doing so "of right" has passed. The analysis is therefore restricted to the allegations contained in the original complaint.
[3] With the exception of Defendant Washington, Plaintiff checked the "official capacity" box next to each one of the present Defendants. (ECF No. 1).

injunctive relief seeking to change the culture of retaliation against prisoners exercising protected [c]onstitutional rights." (ECF No. 47, PageID.796).

The Eleventh Amendment to the United States Constitution provides that no citizen of the United States shall commence a suit against any state. U.S. Const. amend. XI.; *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). A suit against a state officer in his or her official capacity is a suit against the entity he or she represents. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Defendants, working in various positions for the MDOC, are all state employees. Therefore, by suing Defendants in their official capacities, Plaintiff is effectively suing the State of Michigan. *See Maben v. Thelen*, 887 F.3d 252, 257, 270–71 (6th Cir. 2018) (holding that the Eleventh Amendment barred a suit against a prison guard in his official capacity); *Baskerville v. Blot*, 224 F. Supp. 2d 723, 738 (S.D.N.Y. 2002) (holding that the Eleventh Amendment barred a lawsuit against "corrections officers [and] nurses employed by the New York State Department of Corrections" in their official capacities). The official capacity claims against Defendants for monetary damages are therefore barred by Eleventh Amendment immunity.

While the Eleventh Amendment does not prohibit suits against states for purely injunctive relief, *see Ex parte Young*, 209 U.S. 123, 148 (1908), the Complaint requests only monetary damages. (ECF No. 1, PageID.13). Moreover, the Complaint's allegations are limited to injuries that occurred in the first three months of 2021. The *Ex parte Young* exception "does not . . . extend to any retroactive relief." *Kanuszewski v. Michigan Dep't of Health & Hum. Servs.*, 927 F.3d 396, 417, (6th Cir. 2019). In response to the

present motion, Plaintiff argues that he is seeking the injunctive relief of "chang[ing] the culture of retaliation against [MDOC] prisoners" and that he has been the victim of retaliatory behavior since filing the present action. (ECF No. 47, PageID.796). Aside from the vagueness of his "changing the culture" claim, Plaintiff declined to amend his complaint during the period he was allowed "by right" and has not since requested leave to file an amended complaint to include a request for injunctive relief. Because the *Ex Parte Young* exception allowing for suits against individuals in their official capacities for injunctive relief does not apply, the official capacity claims should be dismissed.

### 2. Qualified Immunity

Defendants also contend that the claims against them are barred by qualified immunity. (ECF No. 39, PageID.356).

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (1999) (quotation marks omitted). In a § 1983 claim, "[t]he first step is to determine if the facts alleged make out a violation of a constitutional right." *Shumate v. City of Adrian, Michigan*, 44 F.4th 427, 439 (6th Cir. 2022) (citing *Pearson*, 555 U.S. at 232). "The second is to ask if the constitutional right was clearly established at the time of the alleged violation." *Id.* at 439 (citing *Wright v. City of Euclid*, 962 F.3d 852, 864 (6th Cir. 2020)). "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates

that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (punctuation and internal citations omitted).

The order of the two-part inquiry is left to the "'sound discretion'" of the court. *Kanuszewski,* 927 F.3d at 414 (quoting *Pearson*, 555 U.S. at 236). Where there is no constitutional violation, the court "need not decide whether" the constitutional violation alleged is "clearly established at the time of incident." *Jones v. City of Cincinnati*, 736 F.3d 688, 696 (6th Cir. 2012). Likewise, upon finding that a right is not clearly established, the court is not required "to decide whether a constitutional violation occurred." *Id.* (citing *Pearson,* 555 U.S. at 237); *see also Jefferson v. Lewis,* 594 F. 3d 454, 460 (6th Cir. 2010) (where the court finds that a defendant's actions reasonable, it need not decide whether a constitutional violation has occurred).

The Court first considers Plaintiff's claim that Defendants' response (or lack thereof) to the COVID-19 pandemic supports a cause of action. Under the Eighth Amendment, prisoners have a constitutional right to medical care. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Prison officials may not act with deliberate indifference to the medical needs of their prisoners. *Id.* at 104. An Eighth Amendment claim has two components, one objective and the other subjective. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2002). Under the objective component, the plaintiff must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer,* 511 U.S. at 834. It is undisputed that the health

risks associated with COVID-19, particularly within the first year of the pandemic, constituted a "substantial risk of harm."

Under the subjective component, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id.* Deliberate indifference may be established by showing an interruption of a prescribed plan of treatment, or a delay in medical treatment. *Id.*; *Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992). As to the risks posed by COVID-19 "[t]here is no question that Defendants were able to infer a substantial risk to Plaintiff and other prisoners. 'When a risk of harm is obvious, the Court 'may infer the existence of [a] subjective state of mind.'" *Williams v. Rurka*, No. 20-12349, 2022 WL 4109464, at *4 (E.D. Mich., September 8, 2022) (Murphy, J.) (quoting *Hope v. Pelzer*, 536 U.S. 730, 738 (2002)).

Still, Plaintiff cannot satisfy the subjective component of the Eighth Amendment claims. "'[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.'" *Wilson v. Williams*, 961 F.3d 829, 840 (6th Cir. 2020) (quoting *Farmer,* 511 U.S. at 834). In *Wilson,* federal prisoners housed in the Elkton Federal Correctional Institution in Ohio filed a petition under 28 U.S.C. § 2241 seeking release from the custody of the Bureau of Prisons ("BOP") to avoid exposure to COVID-19. The Court vacated the district court's preliminary injunction, finding that the

petitioners could not satisfy the subjective component of their Eighth Amendment claim because the respondents had "responded reasonably" to the risks posed by COVID-19. *Id.* at 839-840. The Court observed that the BOP's actions to combat COVID-19 included screening inmates for the virus; isolating and quarantining individuals who had contracted the virus; limiting inmates' movements; limiting group gatherings; screening visitors; cleaning common areas; educating prisoners as to ways to avoid contracting the virus; and providing soap, sanitizer, and masks to the prisoners and staff. *Id.* at 839-840.

Present Defendants note that like the BOP did in *Wilson,* the MDOC "promulgated several policies to deal with COVID-19 . . . ." (ECF No. 39, PageID.370). The MDOC Director's Office Memorandum 2021-26 ("DOM") effective at the time of the events in question, requires the use of masks; the screening of staff and visitors; a distance of a least six feet between individuals; limited group meetings; the designation of isolated spaces; the isolation of COVID-positive prisoners; an adequate supply of soap to prisoners; a distance of six feet between prisoners standing in line and eating in the dining hall; the sanitation of dining hall tables between shifts; the denial of transfers unless approved by the CFA Deputy Director; and a 14-day period of quarantine for prisoners in close contact with COVID-positive individuals. (ECF No. 39-7, PageID.527-537).

As in *Wilson,* the MDOC's measures show that reasonable precautions were taken to contain the spread of COVID-19. In addition, Plaintiff's allegations, taken as true, do not state that the individual Defendants' actions were unreasonable under those circumstances. Plaintiff faults Defendant Nagy for not letting him leave the quarantined

area one day after Plaintiff came in "close contact," with an infected prisoner, despite that Plaintiff tested negative for COVID-19. (ECF No. 1, PageID.8). However, Nagy's response that his "hands were tied" by the policies implemented by Defendants McIntyre and Buskirk is consistent with the DOM requirement that a prisoner who has been in "close contact" with an infected individual must remain quarantined for 14 days. (ECF No. 39-7, PageID.529). The DOM requirement is consistent with CDC guidelines recommending a 14-day period of quarantine for individuals exposed to COVID-19. *See* CDC Interim Guidance, (March 27, 2020), (ECF No. 39-5, PageID.389), CDC Interim Guidance, December 31, 2020) ("[C]orrectional and detention facilities should continue to use a 14-day quarantine period . . . ."), (ECF No. 39-12, PageID.651). Defendant White's refusal to transfer Plaintiff before the 14-day period ended based without the approval of his superiors is also consistent with the reasonable measures set forth in the DOM. While Plaintiff takes issue with being placed in an area of the prison regularly designated for inmates at a higher security level, the DOM states that individuals under quarantine "shall be placed . . . in a designated isolation area as soon as resources permit regardless of their security level . . . ." (*Id.* at PageID.528-529). Aside from the fact that Nagy and White's refusal to transfer Plaintiff back into the general prison population was reasonable under those circumstances, Plaintiff does not allege injury as a result of being placed in a higher security level. As in *Wilson,* these policies constitute a reasonable response to the COVID-19 pandemic.

The Complaint's allegation that Defendants Baily, Root, Haskett, Ferguson and Holzchu were aware of the risk COVID-19 posed to Plaintiff but failed to take reasonable

measures to avoid the risk is unaccompanied by any factual allegations. Plaintiff's "conclusory statements," without more, fail to state a claim against these Defendants. *Twombly*, 550 U.S. at 555. Plaintiff alleges Defendant Washington, the Director of the MDOC "knew or should have known" of the risks posed by COVID-19, but does not allege personal involvement by Washington or that the measures promulgated under Washington's supervision were not reasonable. (ECF No. 1, PageID.9).

In light of Plaintiff's failure to plead an Eighth Amendment violation, the Court need not determine whether the constitutional violation alleged was "clearly established" at the time of the events in question. *Jones*, 736 F.3d at 696; *Williams,* at *5 ("Because Defendant acted reasonably, Defendant did not commit a constitutional violation. The Court will therefore grant immunity to the Defendant.").

### 3. Allegations of Retaliation

Finally, Defendants argue that the claims of retaliation against Rurka should be dismissed based on Plaintiff's failure to "develop" the allegations. (ECF No. 39, PageID.363).

While the Complaint alleges that Defendant Rurka, JCF's Deputy Warden, told others to harass, threaten, and falsely accuse Plaintiff in retaliation for complaining about being placed in quarantine, Plaintiff's conclusory statements are insufficient to state a claim of retaliation. (ECF No. 1, PageID.8). To make out a claim for unlawful retaliation under the First Amendment, three elements are necessary:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from

    continuing to engage in that conduct; and (3) there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Plaintiff's failure to include dates, times, or individuals involved in carrying out Rurka's orders mandates dismissal of this claim.[4] "To survive a Motion to Dismiss, claims of retaliation may not be conclusory, and unsupported by any facts or evidence." *Annabel v. Frost*, No. 14-10244, 2016 WL 270294, at *5 (E.D. Mich. January 22, 2016) (citing *Kensu v. Haigh*, 87 F. 3d 172, 175-176 (6th Cir. 1996)).

### E. Conclusion

For the reasons discussed above, **I RECOMMEND** that this Court **GRANT** Defendants Heidi Washington, Noah Nagy, Scott Bailey, Jeffrey White, Russ Rurka, Nathan Root, Michael Heskett, Billy Ferguson, and Andrew Holzschu's Motion to Dismiss

---

[4] Plaintiff later elaborated on his claims of retaliation in his motion for a TRO. (ECF Nos. 19, 22, 44). In that motion, he claimed that he was subjected to excessive room searches, the destruction of his legal material, threats of violence, and the tampering of potential witnesses. (ECF No. 19, PageID.124). In recommending the denial of that motion, this Court noted as follows:

> [D]ocuments attached to the motion indicate that Plaintiff was ticketed for legitimate, non-retaliatory reasons: making phone calls in violation of a call restriction, (ECF No. 19, PageID.135-136) ("72 calls made in total while this inmate was on sanctions and not a single one was to an attorney"); refusing a direct order to wear a mask (*Id*., PageID.137-138) (Plaintiff "continued through the entire chow hall without having a mask" despite order to don a mask); Plaintiff refused to provide a urine sample after showing signs of intoxication (*Id*., PageID.142-143) (refused required use of hand sanitizer required before handling sample cup, thus preventing officer from obtaining a urine sample). An investigation made after Plaintiff accused an officer of "trashing" his legal documents revealed "no evidence" to support the claims. (*Id*., PageID.152-154).

(ECF No. 22, PageID.164-165). As noted above, Plaintiff has not attempted to amend his complaint although he was permitted to do so as of right for 21 days after the present motion was filed. Fed. R. Civ. P. 15. My analysis is therefore limited to the allegations as set forth in the original complaint.

under Fed. R. Civ. P. 12(b)(6), dismissing these Defendants **WITH PREJUDICE**. (ECF No. 39).

### III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this R&R. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this R&R to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  September 26, 2022                              S/ PATRICIA T. MORRIS
                                                                                   Patricia T. Morris
                                                                                   United States Magistrate Judge