## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

TYRONE WILLIAM MAHAN,       CASE NO. 2:22-cv-10489

     *Plaintiff*,             HON. GEORGE CARAM STEEH
*v.*                      DISTRICT JUDGE

  NOAH NAGY, ET AL.,         HON. PATRICIA T. MORRIS
                               MAGISTRATE JUDGE

     *Defendants*.

_____/

## REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 65)

**I.    RECOMMENDATION**

For the following reasons, **I RECOMMEND** that this Court **DENY** Plaintiff Tyrone William Mahan's ("Plaintiff's") September 16, 2022 motion for summary judgment (ECF No. 65).

**II.    REPORT**

**A.    Procedural and Factual Background**

Plaintiff is a prison inmate in the custody of the Michigan Department of Corrections ("MDOC") at the G. Robert Cotton Correctional Facility ("JCF") in Jackson, Michigan. He alleges Eighth Amendment violations and retaliation in violation of the First Amendment by various prison officials stemming from his

quarantine placement in January 2021 following "close contact" with another prisoner testing positive for COVID-19.  (ECF No. 1, PageID.8).

### 1.  The Complaint

The Complaint, filed March 1, 2022, contains the following factual allegations.

On January 1, 2021, after coming into "close contact" with a prisoner testing positive for COVID-19, Plaintiff was taken from his level 1 security unit and placed in quarantine among prisoners from levels 2 to 4 security units.  (ECF No. 1, PageID.8).  Although Plaintiff tested negative for the virus the next day, he was forced to stay in the quarantine unit.  (*Id*.)  Plaintiff asked Defendant Nagy for a transfer out of the unit, to which Nagy responded that "his hands [were] tied" by a state policy implemented by Defendants McIntyre and Buskirk.  (*Id*.)  Plaintiff alleges that Defendant Baily was aware of the substantial risk to Plaintiff but failed to take reasonable measures to avoid risk.  (*Id*.)  Defendant White also failed to intervene on Plaintiff's behalf, stating that the requested transfer would need to be cleared by Defendant Bussell.  (*Id*.)   Defendant Rurka was also aware of and disregarded the substantial risk to Plaintiff and instead of alleviating the risk, told subordinate employees "to har[]ass, threaten, and falsely accuse [Plaintiff] of all types of misconducts" in retaliation for complaining about the quarantine placement.  (*Id*.)  Defendant Austin was not only aware that Plaintiff faced a substantial risk of

serious harm, but also administered an "immune weakening medication," placing Plaintiff "at highest risk" of contracting COVID-19. (*Id.*) Defendant Stokley-Hamdan also failed to take reasonable measures to protect Plaintiff from harm. (*Id.*, PageID.9). Although Defendant Root acknowledged complaints from inmates protesting their placement in the quarantine unit, he did nothing to avert the risk. (*Id.*) Defendants Haskett, Ferguson, and Holzchu likewise failed to avert the risks to Plaintiff. (*Id.*) Defendants Washington and McIntyre "knew or should have known" that Plaintiff faced a substantial risk of serious harm but disregarded the risk. (*Id.*)

Plaintiff alleges that as a result of being required to share the same living quarters with COVID-19-positive inmates, he suffered "emotional, mental and physical harm," including becoming "obese from a[n] eating disorder, hair loss from stress, [and] thoughts of suicide." (*Id.*, PageID.11). He alleges that he later "caught the virus and refused treatment,"[1] adding that he experienced "breathing issue[s] and body pains" from complications of the virus. (*Id.*, PageID.12). He claims that he has been "mistreated, harassed, [and] threaten[ed] [with] continued incarceration. . . ." (*Id.*). He requests monetary damages and costs.

### 2. Procedural History

---

[1] It is unclear whether after catching the virus, Plaintiff "refused treatment," or "was refused treatment" by medical staff. (ECF No. 1, PageID.11).

On March 28, 2022, the District Court summarily dismissed the following Defendants under 28 U.S.C. §§ 1997e(c), 1915(e)(2), and 1915A(b): Thomas Cobb; Timothy Schubring; Sirena Landfair, Health Unit Manager ("HUM"); Austin, Hearing Investigator; C. Young, Assistant Resident Unit Supervisor ("ARUS"); C. McCumber-Henry; Jimmy Jarrett, Deputy Warden, Tiffani Kisor, Assistant Deputy Warden ("ADW"); Stevenson, Correctional Officer ("CO"); and Brian Nichelson, CO. (ECF No. 7, PageID.42).

The Court declined to dismiss the following Defendants: N. Nagy, Warden of JCF; S. Bailey, Deputy Warden; J. White, ADW; R. Ruka, ADW; K. Austin, NP; N. Stokley-Hamdan, NP; Lt. Root, CO; Sgt. Haskett, CO; Sgt. Ferguson, CO; Officer Holzchu, CO; Joshua Buskirk, PA-C; Heidi Washington, Director of the MDOC; Carmen McIntyre, Chief Medical Officer ("CMO"); and Carmen Bussell. (*Id*., PageID.42-43).

On April 15, 2022, Magistrate Judge Kimberly G. Altman ordered the case excluded from the pro se prisoner mediation program because Defendants K. Austin and N. Stokley-Hamdan, through their employer Corizon Health, declined to engage in mediation. (ECF No. 10, PageID.50).

The same month, Plaintiff filed a motion for a TRO, seeking to enjoin MDOC staff from harassing him; transferring him to another prison or custody level; excessive searches of his cell; ignoring his medical needs; destroying his legal

4

material; threatening violence; censoring his mail; and retaliating against him for asserting his constitutional rights.  (ECF No. 19, PageID.124).  On July 13, 2022, the District Court adopted my recommendation to deny the motion for a TRO on the basis that Plaintiff had not shown a risk of irreparable harm.  (ECF Nos. 22, 44).

On September 26, 2022, the undersigned recommended granting the motion to dismiss by Defendants Washington, Nagy, Bailey, White, Rurka, Root, Haskett, Ferguson, and Hulzschu.   (ECF Nos. 39, 69).   As of this writing, that recommendation is pending before the District Court.  On September 29, 2022, Defendants Buskirk, Bussell, and McIntyre filed a motion to dismiss.   (ECF No. 73).

## B.    Summary Judgment

When a movant shows that "no genuine dispute as to any material fact" exists, the court will grant his motion for summary judgment. Fed. R. Civ. P. 56(a). In reviewing such a motion, the court must view all facts and inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears "the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986)) (internal quotation marks omitted). In making its determination, a court may consider the

plausibility of the movant's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party cannot meet its burden of proof. *Celotex*, 477 U.S. at 325.

The non-moving party cannot rest merely on the pleadings in response to a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). "[T]o withstand a properly supported motion for summary judgment, the non-moving party must identify specific facts and affirmative evidence that contradict those offered by the moving party." *Cosmas v. Am. Express Centurion Bank*, 757 F. Supp. 2d 489, 492 (D. N.J. 2010). In doing so, the non-moving party cannot simply assert that the other side's evidence lacks credibility. *Id.* at 493. And while a *pro se* party's arguments are entitled to liberal construction, "this liberal standard does not, however, 'relieve [the party] of his duty to meet the requirements necessary to defeat a motion for summary judgment.'" *Veloz v. New York*, 339 F. Supp. 2d 505, 513 (S.D. N.Y. 2004) (quoting *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003)). "[A] pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902

F. Supp. 424, 429 (S.D. N.Y. 1995) (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

### C. The Eighth Amendment in the Context of COVID-19

Plaintiff's claim that Defendants' response to the COVID-19 pandemic was inadequate is analyzed under the Eighth Amendment. (ECF No. 65). Under the Eighth Amendment, prisoners have a constitutional right to medical care. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Prison officials may not act with deliberate indifference to the medical needs of their prisoners. *Id.* at 104. An Eighth Amendment claim has two components, one objective and the other subjective. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2002). Under the objective component, the plaintiff must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer,* 511 U.S. at 834. Plaintiff has met the first prong of an Eighth Amendment claim. It is undisputed that the health risks associated with COVID-19, particularly within the first year of the pandemic, constituted a "substantial risk of harm."

Under the subjective component, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id.* Deliberate indifference may be established by

7

showing an interruption of a prescribed plan of treatment, or a delay in medical treatment. *Id.*; *Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992). As to the risks posed by COVID-19 "[t]here is no question that Defendants were able to infer a substantial risk to Plaintiff and other prisoners. 'When a risk of harm is obvious, the Court 'may infer the existence of [a] subjective state of mind.'" *Williams v. Rurka*, No. 20-12349, 2022 WL 4109464, at *4 (E.D. Mich. Sept. 8, 2022) (Murphy, J.) (quoting *Hope v. Pelzer*, 536 U.S. 730, 738 (2002)). However, "'[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.'" *Wilson v. Williams*, 961 F.3d 829, 840 (6th Cir. 2020) (quoting *Farmer,* 511 U.S. at 834).

In *Wilson,* federal prisoners housed in the Elkton Federal Correctional Institution in Ohio filed a petition under 28 U.S.C. § 2241 seeking release from the custody of the Bureau of Prisons ("BOP") to avoid exposure to COVID-19. The Court vacated the district court's preliminary injunction, finding that the petitioners could not satisfy the subjective component of their Eighth Amendment claim because the respondents had "responded reasonably" to the risks posed by COVID-19. *Id.* at 839-840. The Court observed that the BOP's actions to combat COVID-19 included screening inmates for the virus; isolating and quarantining individuals who had contracted the virus; limiting inmates' movements; limiting group

gatherings; screening visitors; cleaning common areas; educating prisoners as to ways to avoid contracting the virus; and providing soap, sanitizer, and masks to the prisoners and staff. *Id.* at 839-840.  As discussed below, the MDOC Defendants' response to the pandemic was reasonable.

### D.  Analysis

In arguing for summary judgment, Plaintiff restates the Complaint's allegations against Defendants Washington, Nagy, Bailey, White, Rurka, Root, Heskett, Ferguson, and Hulzchu.  (ECF No. 65, PageID.1107).  In response, these Defendants, as well as additional MDOC Defendants Dr. Carmen McIntyre-Leon, Karmen Bussell, and Joshua Buskirk, contend that the motion should be denied because Plaintiff fails to support his motion with admissible evidence. They note that summary judgment is inappropriate because discovery has not begun.  (ECF No. 76, PageID.1212).  They add that the claims against them are barred by absolute and qualified immunity.  (*Id.*)  In a separate response, Corizon Defendants K. Austin and Stokely-Hamdan also argue that they have "not yet had the opportunity for discovery.  (ECF No. 77, PageID.1260).

### 1.  Plaintiff's Motion is Premature

As a threshold matter, Plaintiff's motion should be denied as premature.  "A court may rule on a motion for summary judgment only after the nonmoving party has had 'adequate time for discovery.'" *E. Kentucky Cardiothoracic Surgery, P.S.C.*

9

*v. Ashland Hosp. Corp.*, 119 F. App'x 715, 717 (6th Cir. 2004) (quoting *Celotex*, 477 U.S. at 322); *Martin v. Ohio Tpk. Comm'n*, 968 F.2d 606, 608 (6th Cir. 1992) ("Summary judgment is appropriate if, *after an opportunity for discovery*, the moving party demonstrates that there is no genuine issue of material fact as to the existence of an element essential to the non-moving party's case and on which the non-moving party would bear the burden of proof at trial.") (emphasis added).  Here, discovery has not begun and two separate motions to dismiss are pending.  (ECF Nos. 39, 73).  Plaintiff's motion can be denied on that basis alone.

### 2.  Alternatively, the Official and Individual Capacity Claims Against Defendants Washington, Nagy, Bailey, White, Rurka, Root, Heskett, Ferguson, and Hulzchu are Subject to Dismissal[2]

Defendants also argue that Plaintiff has failed to state a claim upon which relief can be granted.  Because as of this writing, a motion to dismiss by Defendants McIntyre-Leon, Bussell, and Buskirk has not yet been fully briefed, the Court declines to address the allegations against them.  (ECF No. 73).  Because Defendants Austin and Stokely-Hamdan have not yet filed a dispositive motion, the Court likewise declines to address the allegations against them.

In contrast, the Court has recommended that the motion to dismiss by Defendants Washington, Nagy, Bailey, White, Rurka, Root, Heskett, Ferguson, and

---

[2]Defendant Washington was not named in her official capacity.

Hulzchu be granted based on the failure to state a claim under Fed. R. Civ. P. 12(b)(6) and either Eleventh Amendment immunity, qualified immunity, or both. (ECF Nos. 39, 69).  Plaintiff's current motion for summary judgment can be denied (at least as to these nine Defendants) on that basis as well.

The rationale for recommending that these nine Defendants be dismissed is summarized here.  As to the official capacity claims against eight of these nine Defendants (Nagy, Bailey, White, Rurka, Root, Heskett, Ferguson, and Hulzchu), the undersigned found that the claims for monetary damages were barred by the Eleventh Amendment.  (ECF No. 69, PageID.1133-34) (citing *See Maben v. Thelen*, 887 F.3d 252, 257, 270–71 (6th Cir. 2018)) (holding that the Eleventh Amendment barred a suit against a prison guard in his official capacity).  Because Plaintiff requests only monetary damages, the exception allowing for purely injunctive relief against state actors in their official capacities as set forth in *Ex parte Young*, 209 U.S. 123, 148 (1908), does not apply.  (ECF No. 69, PageID.1133) ("[T]he Complaint's allegations are limited to injuries that in occurred in the first three months of 2021" and "the *Ex Parte Young* exception [does] not extend to retroactive relief.") (citing *Kanuszewski v. Michigan Dep't of Health & Hum. Servs.*, 927 F.3d 396, 417, (6th Cir. 2019)).

In the Report, I found that eight of nine of these Defendants (Washington, Nagy, Bailey, White, Root, Heskett, Ferguson, and Hulzchu) were entitled to qualified immunity against the Eighth Amendment claims against them in their individual capacities.  (ECF No. 69).  I noted that under the objective component of an Eighth Amendment claim it was "undisputed that the health risks associated with COVID-19, particularly within the first year of the pandemic, constituted a "substantial risk of harm." (*Id*. at PageID.1136) (internal citations omitted).  As to the subjective component, I found that there was no question that Defendants could infer a substantial risk to Plaintiff and other prisoners.  (*Id*.) ("When a risk of harm is obvious, the Court 'may infer the existence of [a] subjective state of mind.'"). *Williams v. Rurka*, No. 20-12349, 2022 WL 4109464, at *4 (E.D. Mich., September 8, 2022) (Murphy, J.) (quoting *Hope v. Pelzer*, 536 U.S. 730, 738 (2002)).

However, the Report states as follows:

> Still, Plaintiff cannot satisfy the subjective component of the Eighth Amendment claims. "'[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.'" *Wilson v. Williams*, 961 F.3d 829, 840 (6th Cir. 2020)(quoting *Farmer,* 511 U.S. at 834). In *Wilson,* federal prisoners housed in the Elkton Federal Correctional Institution in Ohio filed a petition under 28 U.S.C. § 2241 seeking release from the custody of the Bureau of Prisons ("BOP") to avoid exposure to COVID-19.  The Court vacated the district court's preliminary injunction, finding that the petitioners could not satisfy the subjective component of their Eighth Amendment claim because the respondents had "responded reasonably" to the risks posed by COVID-19. *Id.* at 839-840. The Court

observed that the BOP's actions to combat COVID-19 included screening inmates for the virus; isolating and quarantining individuals who had contracted the virus; limiting inmates' movements; limiting group gatherings; screening visitors; cleaning common areas; educating prisoners as to ways to avoid contracting the virus; and providing soap, sanitizer, and masks to the prisoners and staff. *Id.* at 839-840.

(ECF No. 69, PageID.1136-37).

As in *Wilson*, the Report noted that the MDOC promulgated several policies

to address COVID-19:

> The MDOC Director's Office Memorandum 2021-26 ("DOM") effective at the time of the events in question, requires the use of masks; the screening of staff and visitors; a distance of a least six feet between individuals; limited group meetings; the designation of isolated spaces; the isolation of COVID-positive prisoners; an adequate supply of soap to prisoners; a distance of six feet between prisoners standing in line and eating in the dining hall; the sanitation of dining hall tables between shifts; the denial of transfers unless approved by the CFA Deputy Director; and a 14-day period of quarantine for prisoners in close contact with COVID-positive individuals. (ECF No. 39-7, PageID.527-537).

(ECF No. 69, PageID.1137).   The Report concluded that "the MDOC's

measures show that reasonable precautions were taken to contain the spread

of COVID-19." (*Id.*)

The Report also found that Plaintiff had failed to allege that the

individual Defendants' actions were not reasonable.   While Plaintiff faults

Nagy for not letting him leave the quarantined area after Plaintiff came in

close contact with an infected prisoner (ECF No. 1, PageID.8), Nagy was

bound by the policies implemented by Defendants McIntyre and Buskirk,

which were consistent with the DOM requirement that a prisoner who has been in "close contact" with an infected individual must remain quarantined for 14 days. (ECF No. 69, PageID.1138) (ECF No. 39-7, PageID.529).   In turn, the DOM requirement is based on CDC guidelines recommending a 14-day period of quarantine for individuals exposed to COVID-19. (ECF No. 69, PageID.1138) (ECF No. 39-5, PageID.389) ("[C]orrectional and detention facilities should continue to use a 14-day quarantine period . . . ."); *see also* (ECF No. 39-12, PageID.651).   As to Defendant White, the Report found that his refusal to transfer Plaintiff before the 14-day period ended based without the approval of his superiors is also consistent with the reasonable measures set forth in the DOM:  while "Plaintiff takes issue with being placed in an area of the prison regularly designated for inmates at a higher security level, the DOM states that individuals under quarantine 'shall be placed . . . in a designated isolation area as soon as resources permit *regardless of their security level* . . . .'"   (ECF No. 69, PageID.1138) (ECF No. 39-12, PageID.528-529) (emphasis added).  The Report observed that "Plaintiff does not allege injury as a result of being placed in a higher security level," and "[a]s in *Wilson*, the MDOC policies constitute a reasonable response to the COVID-19 pandemic."  (ECF No. 69, PageID.1138).

14

As to Defendants Baily, Root, Haskett, Ferguson and Holzchu, the Report determined that Plaintiff's allegation that they were aware of the risk COVID-19 posed but failed to take reasonable measures to avoid the risk was "unaccompanied by any factual allegations" and that Plaintiff's "conclusory statements," without more, fail to state a claim against these Defendants. (*Id*. at PageID.1138-39) (quoting *Twombly*, 550 U.S. at 555). Although Plaintiff claims that Defendant Washington, the Director of the MDOC "knew or should have known" of the risks posed by COVID-19, he fails to allege personal involvement by her or that the measures promulgated under her supervision were not reasonable. (ECF No. 69, PageID.1139) (ECF No. 1, PageID.9). The District Court's adoption of my findings and dismissal of these Defendants would render Plaintiff's motion for summary judgment moot.

### 3.  The Retaliation Claims Against Defendant Rurka

The Report also addressed Plaintiff's allegation that Defendant Rurka, JCF's Deputy Warden, told others to harass, threaten, and falsely accuse Plaintiff in retaliation for complaining about being placed in quarantine. (ECF No. 69, PageID.1139) (ECF No. 1, PageID.8). However, the Report concluded that Plaintiff's conclusory statements were insufficient to state a claim of retaliation under *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

15

Plaintiff's failure to include dates, times, or individuals involved in carrying out Rurka's orders mandates dismissal of this claim.[4] "To survive a Motion to Dismiss, claims of retaliation may not be conclusory, and unsupported by any facts or evidence." *Annabel v. Frost*, No. 14-10244, 2016 WL 270294, at *5 (E.D. Mich. January 22, 2016) (citing *Kensu v. Haigh*, 87 F. 3d 172, 175-176 (6th Cir. 1996)).

(ECF No. 69, PageID.1140). The Report noted further that while Plaintiff "later elaborated on his claims of retaliation in a motion for a TRO," the documents attached to that motion showed that he was disciplined for "legitimate, non-retaliatory reasons."[3] (*Id*. at PageID.1149, n. 4). If the District Court adopts my recommendation to dismiss the claim of retaliation against Defendant Rurka, Plaintiff's motion for summary judgment is moot.

### E. Conclusion

For the reasons discussed above, **I RECOMMEND** that this Court **DENY** Plaintiff Tyrone William Mahan's motion for summary judgment. (ECF No. 65).

## III.   **REVIEW**

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days

---

[3] The Recommendation to deny the motion for a TRO was adopted by the District Court. (ECF No. 44).

after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this R&R. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this R&R to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  November 1, 2022                S/ PATRICIA T. MORRIS
                                       Patricia T. Morris
                                       United States Magistrate Judge