UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| TYRONE WILLIAM MAHAN, | CASE NO. 2:22-cv-10489 |
| *Plaintiff,* | HON. GORGE CARAM STEEH |
| v. | DISTRICT JUDGE |
| NOAH NAGY, ET AL., | HON. PATRICIA T. MORRIS |
| | MAGISTRATE JUDGE |
| *Defendants*. | |
| _____ / | |

# REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER (ECF No. 85)

## I.    RECOMMENDATION

For the following reasons, **I RECOMMEND** that this Court **DENY** Plaintiff Tyrone William Mahan's ("Plaintiff's") second motion for a Temporary Restraining Order ("TRO").  (ECF No. 85).

## II.    REPORT

### A.    Procedural and Factual Background

Plaintiff is a prison inmate in the custody of the Michigan Department of Corrections ("MDOC") at the G. Robert Cotton Correctional Facility ("JCF") in Jackson, Michigan.  He alleges Eighth Amendment violations and retaliation in violation of the First Amendment by various prison officials stemming from his

1

quarantine placement in January 2021 following "close contact" with another prisoner testing positive for COVID-19. (ECF No. 1, PageID.8).

### 1. The Complaint

The Complaint, filed March 1, 2022, contains the following factual allegations.

On January 1, 2021, after coming into "close contact" with a prisoner testing positive for COVID-19, Plaintiff was taken from his level 1 security unit and placed in quarantine among prisoners from levels 2 to 4 security units. (ECF No. 1, PageID.8). Although Plaintiff tested negative for the virus the next day, he was forced to stay in the quarantine unit. (*Id*.) Plaintiff asked Defendant Nagy for a transfer out of the unit, to which Nagy responded that "his hands [were] tied" by a state policy implemented by Defendants McIntyre and Buskirk. (*Id*.) Plaintiff alleges that Defendant Baily was aware of the substantial risk to Plaintiff but failed to take reasonable measures to avoid risk. (*Id*.) Defendant White also failed to intervene on Plaintiff's behalf, stating that the requested transfer would need to be cleared by Defendant Bussell. (*Id*.) Defendant Rurka was also aware of and disregarded the substantial risk to Plaintiff and instead of alleviating the risk, told subordinate employees "to har[]ass, threaten, and falsely accuse [Plaintiff] of all types of misconducts" in retaliation for complaining about the quarantine placement. (*Id*.) Defendant Austin was not only aware that Plaintiff faced a substantial risk of

2

serious harm, but also administered an "immune weakening medication" placing Plaintiff "at highest risk" of contracting COVID-19. (*Id.*) Defendant Stokley-Hamdan also failed to take reasonable measures to protect Plaintiff from harm. (*Id.*, PageID.9). Although Defendant Root acknowledged complaints from inmates protesting their placement in the quarantine unit, he did nothing to avert the risk. (*Id.*) Defendants Haskett, Ferguson, and Holzchu likewise failed to avert the risks to Plaintiff. (*Id.*) Defendants Washington and McIntyre "knew or should have known" that Plaintiff faced a substantial risk of serious harm but disregarded the risk. (*Id.*)

Plaintiff alleges that as a result of being required to share the same living quarters with "covid positive inmates," he suffered "emotional, mental and physical harm," including becoming "obese from a[n] eating disorder, hair loss from stress, [and] thoughts of suicide." (*Id.*, PageID.11). He alleges that he later "caught the virus and refused treatment,"[1] adding that he experienced "breathing issue[s] and body pains" from complications of the virus. (*Id.*, PageID.12). He claims that he has been "mistreated, harassed, [and] threaten[ed] [with] continued incarceration. . . ." (*Id.*). He requests monetary damages and costs.

## 2. Procedural History

---

[1] It is unclear whether after catching the virus, Plaintiff "refused treatment," or "was refused treatment" by medical staff. (ECF No. 1, PageID.11).

3

On March 28, 2022, the District Court summarily dismissed the following Defendants under 28 U.S.C. §§ 1997e(c), 1915(e)(2), and 1915A(b): Thomas Cobb; Timothy Schubring; Sirena Landfair, Health Unit Manager ("HUM"); Austin, Hearing Investigator; C. Young, Assistant Resident Unit Supervisor ("ARUS"); C. McCumber-Henry; Jimmy Jarrett, Deputy Warden, Tiffani Kisor, Assistant Deputy Warden ("ADW"); Stevenson, Correctional Officer ("CO"); and Brian Nichelson, CO. (ECF No. 7, PageID.42).

The Court declined to dismiss the following Defendants: N. Nagy, Warden of JCF; S. Bailey, Deputy Warden; J. White, ADW; R. Ruka, ADW; K. Austin, NP; N. Stokley-Hamdan, NP; Lt. Root, CO; Sgt. Haskett, CO; Sgt. Ferguson, CO; Officer Holzchu, CO; Joshua Buskirk, PA-C; Heidi Washington, Director of the MDOC; Carmen McIntyre, Chief Medical Officer ("CMO"); and Carmen Bussell. (*Id.*, PageID.42-43).

On April 15, 2022, Magistrate Judge Kimberly G. Altman ordered the case excluded from the pro se prisoner mediation program because Defendants K. Austin and N. Stokley-Hamdan, through their employer Corizon Health, declined to engage in mediation. (ECF No. 10, PageID.50).

The same month, Plaintiff filed a motion for a TRO, seeking to enjoin MDOC staff from harassing him; transferring him to another prison or custody level; excessive searches of his cell; ignoring his medical needs; destroying his legal

material; threatening violence; censoring his mail; and retaliating against him for asserting his constitutional rights. (ECF No. 19, PageID.124). On July 13, 2022, the District Court adopted my recommendation to deny the motion for a TRO on the basis that Plaintiff had not shown a risk of irreparable harm. (ECF Nos. 22, 44).

On September 26, 2022, the undersigned recommended granting the motion to dismiss by Defendants Washington, Nagy, Bailey, White, Rurka, Root, Heskett, Ferguson, and Hulzschu. (ECF Nos. 39, 69). As of this writing, that recommendation is currently pending before the District Court. On September 29, 2022, Defendants Buskirk, Bussell, and McIntyre filed a motion to dismiss, currently pending before this Court. (ECF No. 73).

**B.     Applicable Law**

The moving party carries the burden of proving that he or she is entitled to a preliminary injunction or a TRO. *Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 2009). Because preliminary injunctive relief is an "extraordinary remedy," courts are hesitant to grant preliminary injunctive relief and will only do so if an injunction is "clearly" warranted. *Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). Moreover, given the "unique nature of a prison setting," where a prisoner moves to enjoin "prison officials, the court is required to proceed with the utmost care and must recognize the unique nature of the prison

5

setting." *Sango v. Wakley*, No. 1:14-cv-703, 2014 WL 3894652, at *2 (W.D. Mich. Aug. 8, 2014) (citing *Glover v. Johnson*, 855 F.2d 277, 284 (6th Cir.1988)).

When considering whether to issue preliminary injunctive relief, a court must balance the following four factors:

> (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction.

*Bays v. City of Fairborn*, 668 F.3d 814, 818–19 (6th Cir. 2012). No one factor is controlling, and except for the movant's risk of irreparable injury, no single factor is required to obtain injunctive relief. *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 102–03 (6th Cir. 1982) (citing *Sampson v. Murray*, 415 U.S. 61, 88 (1974)). Instead, these factors must be "carefully balanced" by the district court. *Frisch's Rest., Inc. v. Shoney's Inc.*, 759 F.2d 1261 1263 (6th Cir. 1985). Further, although a movant with "no likelihood of success on the merits" generally cannot obtain injunctive relief, a movant need not show an "overwhelming" probability of success on the merits. *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. Aug. 22, 2000); *Sellers v. U. of Rio Grande*, 838 F. Supp.2d 677, 679 (S.D. Ohio 2012).

### C. The Request for a TRO

Plaintiff's requests for injunctive relief pertain exclusively to his legal research. He asks that Defendants or facility staff be required to (1) give him his legal mail on the day that it is received by the institution (2) give him "[a]ccess to research cases from librarians in a timely fashion" (3) order librarians to "do rounds" in segregation every day (4) provide same-day copying and returning of legal material (5) supply him with "legal material, pens, paper, [and a] legal writer" (6) pick up his outgoing legal mail on a daily basis, and (7) guarantee his access to self-litigation manuals and a law dictionary. (ECF No. 85, PageID.1293). Plaintiff argues that Defendants' "ongoing, illegal practices" interfere with his "access to [the] court as a person protected by the ADA." (*Id.*)

The Court need not consider Plaintiff's ultimate likelihood of success on the merits of his claim because his failure to demonstrate irreparable harm in the absence of a TRO, by itself, warrants denial of the present motion. "An irreparable harm is an extraordinary harm that cannot be properly compensated by money damages." *Norris v. Stanley*, 567 F.Supp.3d 818, 823 (W.D. Mich. 2021) (citing *Winter v. NRDC*, 555 U.S. 7, 22 (2008)).

Plaintiff has not shown the risk of "extraordinary harm" in the absence of injunctive relief. Presumably his legal research might be easier if he received his legal mail on same day it is received by the institution, had more timely access to legal research, received daily visits by librarians, and had more convenient access to

7

legal reference resources. However, the fact that Plaintiff must wait more than a day for his incoming mail, would prefer that his outgoing correspondence be mailed immediately, and has less than daily access to legal resources does not demonstrate irreparable harm. *Henry v. City of Eastpointe Police Dep't*, No. 2:11-CV-10192, 2012 WL 3151566, at *2 (E.D. Mich. July 13, 2012), *report and recommendation adopted sub nom. Henry v. Eastpointe Police Dep't*, No. 11-10192, 2012 WL 3149103 (E.D. Mich. Aug. 2, 2012) ("The mere fact that plaintiff's transfer may make it harder for him to prosecute [his civil rights] litigation is not the type of irreparable harm justifying the issuance of a preliminary injunction.").

Here, Plaintiff's inability to receive and send mail and access legal resources on a daily basis does not constitute an irreparable harm. Defendants are not required to provide Plaintiff with writing utensils or uninterrupted access to a self-help manual for *pro se* litigants and a legal dictionary. "The First Amendment protects an inmate's right to access to the courts, but not necessarily his access to all the legal assistance or materials he may desire." *Tinch v. Huggins*, No. 99–3436, 2000 WL 178418, at *1 (6th Cir. Feb.8, 2000) (citing *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985)). Plaintiff is not entitled to the help of a legal writer. "[W]hile prisoners have a constitutional right of access to courts, this requires only that prison officials provide sufficient assistance to give prisoners an adequate opportunity to present their federal constitutional claims in court; there is no free-standing right to

legal assistance from another inmate." *Henry*, 2012 WL 3151566, at *2 (citing *Shaw v. Murphy,* 532 U.S. 223, 231 n.3 (2001)).

Plaintiff's 28 separate submissions in this case (nine in the last two months) also undermine his position that he will be irreparably harmed if his motion for injunctive relief is not granted. For example, his handwritten motion for summary judgment, filed September 16, sets forth the applicable standard of review and the elements of an Eighth Amendment claim. (ECF No. 65). "To merit a preliminary injunction, an injury must be both certain and immediate, not speculative or theoretical." *Memphis A. Philip Randolph Inst. v. Hargett*, 978 F.3d 378, 391 (6th Cir. 2020) (internal citations omitted). Plaintiff's claims of irreparable harm, at best speculative, do not demonstrate that his right to access to the courts will be irreparably harmed in the absence of injunctive relief.

With respect to the final two prongs of this inquiry—whether granting Plaintiff's motion would cause substantial harm to others, and whether it is in the public interest, the principles of federalism and the separation of powers discourage "entanglement" in prison administration absent "a strong constitutional claim," *Rhinehart v. Scutt,* 509 F. App'x. 510, 512-13 (6th Cir. 2013) (internal quotation and quotation marks omitted); *cf. Sango v. Harpst*, No. 08-12709, 2009 WL 365947, at *2 (E.D. Mich. Feb. 11, 2009) ("[F]or this Court to interfere with the operation of the state's prison facilities on the facts of this case would cause

9

substantial harm to others") (citing *Kendrick v. Bland*, 740 F.2d 432, 438 & n.3 (6th Cir. 1984) (courts are ill-equipped to deal with problems of prison administration and reform)); *see also Jackson v. Coronado*, No. 2:18-CV-00019, 2020 WL 4043650, at *2 (W.D. Mich. June 16, 2020), *report and recommendation adopted,* No. 2:18-CV-19, 2020 WL 4039105 (W.D. Mich. July 17, 2020) (quoting *Meachum v. Fano*, 427 U.S. 215, 229 (1976)) (While the plaintiff "invites this Court to become involved in prisoner placement . . . . '[t]he federal courts do not sit to supervise state prisons, the administration of which is of acute interest to the States.'"). The injunctive relief proposed by Plaintiff, doubtlessly requiring policy and staffing changes, is not warranted - particularly here where Plaintiff has not demonstrated that the current practices will cause irreparable harm. As to the fourth prong, he furnishes no rationale as to how his proposed relief would benefit the public. Accordingly, his motion for injunctive relief should not be granted.

### D. Conclusion

For the reasons discussed above, **I RECOMMEND** that this Court **DENY** Plaintiff Tyrone William Mahan's motion for a Temporary Restraining Order. (ECF No. 85).

### III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may

serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this R&R. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this R&R to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  November 1, 2022                         S/ PATRICIA T. MORRIS
                                                Patricia T. Morris
                                                United States Magistrate Judge