UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| TYRONE WILLIAM MAHAN, | CASE NO. 2:22-cv-10489 |
| *Plaintiff,* | HON. GEORGE CARAM STEEH |
| v. | DISTRICT JUDGE |
| K. AUSTIN, NP; | HON. PATRICIA T. MORRIS |
| N. STOKLEY-HAMDAN, NP; | MAGISTRATE JUDGE |
| JOSHUA BUSKIRK, PA-C; | |
| CARMEN MCINTYRE, CMO; and | |
| CARMEN BUSSELL, BHCS, | |
| *Defendants*. | |
| _____/ | |

**REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION FOR DISMISSAL (ECF No. 73)**

**I.   RECOMMENDATION**

For the following reasons, **I RECOMMEND** that this Court **GRANT** Defendants Dr. Carmen McIntyre-Leon, Karmen Bussell,[1] and Joshua Buskirk's Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), dismissing these Defendants **WITH PREJUDICE**.  (ECF No. 73).

---

[1] As to Defendants Carmen McIntyre-Leon and Karmen Bussell, the Court recognizes that in the Complaint's caption, McIntyre-Leon is identified as "McIntyre" and Karmen Bussell, "Carmen Bussell."

1

## II.     REPORT

### A.     Procedural and Factual Background

At the time of the events in question, Plaintiff was a prison inmate in the custody of the Michigan Department of Corrections ("MDOC") at the G. Robert Cotton Correctional Facility ("JCF") in Jackson, Michigan.  He alleges Eighth Amendment violations and retaliation in violation of the First Amendment by various prison officials stemming from his quarantine placement in January 2021 following "close contact" with another prisoner testing positive for COVID-19. (ECF No. 1, PageID.8).

On March 28, 2022, the District Court summarily dismissed the following Defendants under 28 U.S.C. §§ 1997e(c), 1915(e)(2), and 1915A(b):  Thomas Cobb; Timothy Schubring; Sirena Landfair, Health Unit Manager ("HUM"); Austin, Hearing Investigator; C. Young, Assistant Resident Unit Supervisor ("ARUS"); C. McCumber-Henry; Jimmy Jarrett, Deputy Warden, Tiffani Kisor, Assistant Deputy Warden ("ADW"); Stevenson, Correctional Officer ("CO"); and Brian Nichelson, CO. (ECF No. 7, PageID.42).

The Court declined to dismiss the following Defendants:  N. Nagy, Warden of JCF; S. Bailey, Deputy Warden; J. White, ADW; R. Rurka, ADW; K. Austin, NP; N. Stokley-Hamdan, NP; Lt. Root, CO; Sgt. Haskett, CO; Sgt. Ferguson, CO; Officer Holzchu, CO; Joshua Buskirk, PA-C; Heidi Washington, Director of the

MDOC; Carmen McIntyre-Leon, Chief Medical Officer ("CMO"); and Karmen Bussell. (*Id.*, PageID.42-43).

On April 15, 2022, Magistrate Judge Kimberly G. Altman ordered the case excluded from the pro se prisoner mediation program because Defendants K. Austin and N. Stokley-Hamdan, through their employer Corizon Health, declined to engage in mediation. (ECF No. 10, PageID.50). On July 13, 2022, the District Court adopted my recommendation to deny Plaintiff's motion for a temporary restraining order ("TRO"). (ECF Nos. 19, 22, 44). On November 4, 2022, the District Court adopted my recommendation to grant the motion to dismiss by Defendants Washington, Nagy, Bailey, White, Rurka, Root, Heskett, Ferguson, and Hoszschu. (ECF Nos. 39, 69, 94).

The Complaint contains the following factual allegations.

On January 1, 2021, after coming into "close contact" with a prisoner testing positive for COVID-19, Plaintiff was taken from his level 1 security unit and placed in quarantine among prisoners from levels 2 to 4 security units. (ECF No. 1, PageID.8). Although Plaintiff tested negative for the virus the next day, he was forced to stay in the quarantine unit. (*Id.*) Plaintiff asked now-dismissed Defendant Nagy for a transfer out of the unit, to which Nagy responded that "his hands [were] tied" by a state policy implemented by current Defendants McIntyre and Buskirk. (*Id.*) Now-dismissed Defendant White also failed to intervene on Plaintiff's behalf,

3

stating that the requested transfer would need to be cleared by current Defendant Bussell. (*Id*.) Now-dismissed Defendant Washington and current Defendant McIntyre "knew or should have known" that Plaintiff faced a substantial risk of serious harm but disregarded the risk. (*Id*.)

Plaintiff alleges that as a result of being required to share the same living quarters with COVID-19 positive inmates, he suffered "emotional, mental and physical harm," including becoming "obese from a[n] eating disorder, hair loss from stress, [and] thoughts of suicide." (*Id*., PageID.11). He alleges that he later "caught the virus and refused treatment,"[2] adding that he experienced "breathing issue[s] and body pains from complications of the virus. (*Id*., PageID.12). He claims that he has been "mistreated, harassed, [and] threaten[ed] [with] continued incarceration. . ." (*Id*.) He requests monetary damages and costs.

### B. Standard of Review

Under Rule 12(b)(6), a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). Accordingly, a plaintiff's complaint shall be dismissed for failure to state a claim if it lacks sufficient "factual matter (taken as true) to" provide "plausible grounds to

---

[2]The Complaint is unclear as to whether after catching the virus, Plaintiff "refused treatment," or was "refused treatment" by medical staff. (ECF No. 1, PageID.11). However, Plaintiff later denied that he refused any offered medical treatment. (ECF No. 79, PageID.1271).

infer" that the elements of a claim for relief could be met. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *see* Fed. R. Civ. P. 12(b)(6). A complaint must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Mere labels, conclusory statements, or "formulaic recitations" of the elements of a cause of action are not sufficient to meet this burden if they are unsupported by adequate factual allegations. *Id*. (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The requirement to provide a plausible claim does not require that a claim be "probable"; however, a claim must be more than merely "conceivable." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–80 (2009).

Because Plaintiff filed his complaint pro se, his pleadings are liberally construed. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). However, even pro se complaints must satisfy basic pleading requirements. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

### C. Analysis[3]

---

[3]Since the present motion was filed, Plaintiff (by way of a reply brief to another motion) sought to add claims under the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc, *et seq.* ("RLUIPA"), and the Americans with Disabilities Act, 42 U.S.C. § 12101 ("ADA"). (ECF No. 78). He also sought to add more Defendants and filed a motion for leave amend the Complaint. (ECF Nos. 61, 66, 80). Because Plaintiff did not include a proposed amended complaint with the motion, the undersigned directed him to file a proposed amended complaint by November 18, 2022 and denied the motions to "add defendants" as moot. (ECF Nos. 61, 66, 82, 96). Because Plaintiff failed to file a timely proposed amended

### 1. The Official Capacity Claims

Present Defendants, Buskirk, PA; Bussell, RN; and McIntyre, Chief Medical Officer of the MDOC, are sued in both their official and personal capacities.[4] They argue first that under they are entitled to absolute immunity from the claims for monetary damages brought against them in their official capacity. (ECF No. 73, PageID.1178-80).[5]

The Eleventh Amendment to the United States Constitution provides that no citizen of the United States shall commence a suit against any state. U.S. Const. amend. XI.; *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). A suit against a state officer in his or her official capacity is a suit against the entity he or she represents. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

---

complaint, the motion for leave to amend was denied. (ECF No. 97). My analysis is therefore restricted to the allegations against the present three Defendants contained in the original complaint.

[4]Plaintiff states that the MDOC Defendants, including present Defendants, acting in their "OFFICIAL Capacity intentionally exposed [him] to positive COVID-19 inmates with the intent to deprive me of my Constitutional Rights." (ECF No. 1, PageID.7) (capitalization in original).

[5]Plaintiff did not respond to the present motion. But since it was filed on September 29, 2022, Plaintiff filed a total of nine notices, motions, or other requests, including a motion for a TRO. (ECF Nos. 78-81, 83-86, 95). On October 19, 2022, he asked for an extension of time to respond the present motion, adding that he was "not responsible for any late filings since defendant(s) . . . took [his] law library access" and refused him "caselaw or [a] legal writer." (ECF No. 83, PageID.1287). He was granted an extension until November 23, 2022 to file a response.

Defendants, working in various positions for the MDOC, are all state employees. Therefore, by suing Defendants in their official capacities, Plaintiff is effectively suing the State of Michigan. *See Maben v. Thelen*, 887 F.3d 252, 257, 270–71 (6th Cir. 2018) (holding that the Eleventh Amendment barred a suit against a prison guard in his official capacity); *Baskerville v. Blot*, 224 F. Supp. 2d 723, 738 (S.D.N.Y. 2002) (holding that the Eleventh Amendment barred a lawsuit against "corrections officers [and] nurses employed by the New York State Department of Corrections" in their official capacities). The official capacity claims against Defendants for monetary damages are therefore barred by Eleventh Amendment immunity.

While the Eleventh Amendment does not prohibit suits against states for purely injunctive relief, *see Ex parte Young*, 209 U.S. 123, 148 (1908), the Complaint requests only monetary damages. (ECF No. 1, PageID.13). Moreover, the Complaint's allegations are limited to injuries that occurred in the first three months of 2021. The *Ex parte Young* exception "does not . . . extend to any retroactive relief." *Kanuszewski v. Michigan Dep't of Health & Hum. Servs.*, 927 F.3d 396, 417, 2019 WL 2417390 (6th Cir. 2019). Because the *Ex Parte Young* exception allowing for suits against individuals in their official capacities for injunctive relief does not apply, the official capacity claims should be dismissed.

### 2. Qualified Immunity

Present Defendants also contend that the claims against them are barred by qualified immunity. (ECF No. 73, PageID.1180-84).

As a threshold matter, Defendants' arguments rely on exhibits attached to an earlier, now granted motion to dismiss by their former codefendants. (ECF Nos. 39, 39-5, 39-7, 39-12). "As a general rule, a court cannot consider matters outside the four corners of the complaint when ruling on a motion to dismiss under Rule 12(b)(6)." *Blick v. Ann Arbor Pub. Sch. Dist.*, 516 F. Supp. 3d 711, 720, 393 Ed. Law Rep. 216, 2021 WL 351997 (E.D. Mich. 2021). However, "[t]he court may . . . consider documents that a defendant attaches to a motion to dismiss if the documents are referred to in the complaint and are central to the plaintiff's claims." *Id.* The Complaint criticizes the MDOC Director's Office Memorandum ("DOM") in effect at the time of the events in question and the CDC's guidance for the relevant period. (ECF No. 1, PageID.7). And the Court may consider "public records" in reviewing a motion to dismiss. *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008). Because the exhibits consisting of the applicable DOM and CDC protocols are both central to Plaintiff's claims and public records, the Court may consider them.

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (1999) (quotation marks omitted).

In a § 1983 claim, "[t]he first step is to determine if the facts alleged make out a violation of a constitutional right." *Shumate v. City of Adrian, Michigan*, 44 F.4th 427, 439 (6th Cir. 2022) (citing *Pearson* at 232). "The second is to ask if the constitutional right was clearly established at the time of the alleged violation." *Shumate,* at 439 (citing *Wright v. City of Euclid*, 962 F.3d 852, 864 (6th Cir. 2020)). "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (punctuation and internal citations omitted).

The order of the two-part inquiry is left to the "'sound discretion'" of the court. *Kanuszewski,* 927 F.3d at 414 (quoting *Pearson*, 555 U.S. at 236). Where there is no constitutional violation, the court "need not decide whether" the constitutional violation alleged is "clearly established at the time of incident." *Jones v. City of Cincinnati*, 736 F.3d 688, 696 (6th Cir. 2012). Likewise, upon finding that a right is not clearly established, the court is not required "to decide whether a constitutional violation occurred." *Id.* (citing *Pearson,* 555 U.S. at 237); *see also Jefferson v. Lewis,* 594 F. 3d 454, 460 (6th Cir. 2010) (Where the court finds that a defendant's actions reasonable, it need not decide whether a constitutional violation has occurred).

The Court considers Plaintiff's claim that Defendants' response (or lack thereof) to the Covid-19 pandemic supports a cause of action. Under the Eighth Amendment, prisoners have a constitutional right to medical care. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Prison officials may not act with deliberate indifference to the medical needs of their prisoners. *Id.* at 104. An Eighth Amendment claim has two components, one objective and the other subjective. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2002). Under the objective component, the plaintiff must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer,* 511 U.S. at 834. It is undisputed that the health risks associated with COVID-19, particularly within the first year of the pandemic, constituted a "substantial risk of harm."

Under the subjective component, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id.* Deliberate indifference may be established by showing an interruption of a prescribed plan of treatment, or a delay in medical treatment. *Id.*; *Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992). As to the risks posed by COVID-19 "[t]here is no question that Defendants were able to infer a substantial risk to Plaintiff and other prisoners. 'When a risk of harm is obvious, the Court 'may infer the existence of [a] subjective state of mind.'" *Williams v. Rurka*,

No. 20-12349, 2022 WL 4109464, at *4 (E.D. Mich., September 8, 2022) (Murphy, J.) (quoting *Hope v. Pelzer*, 536 U.S. 730, 738 (2002)).

Still, Plaintiff cannot satisfy the subjective component of the Eighth Amendment claims. "'[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.'" *Wilson v. Williams*, 961 F.3d 829, 840 (6th Cir. 2020) (quoting *Farmer,* 511 U.S. at 834). In *Wilson,* federal prisoners housed in the Elkton Federal Correctional Institution in Ohio filed a petition under 28 U.S.C. § 2241 seeking release from the custody of the Bureau of Prisons ("BOP") to avoid exposure to COVID-19. The Court vacated the district court's preliminary injunction, finding that the petitioners could not satisfy the subjective component of their Eighth Amendment claim because the respondents had "responded reasonably" to the risks posed by COVID-19. *Id.* at 839-40. The Court observed that the BOP's actions to combat COVID-19 included screening inmates for the virus; isolating and quarantining individuals who had contracted the virus; limiting inmates' movements; limiting group gatherings; screening visitors; cleaning common areas; educating prisoners as to ways to avoid contracting the virus; and providing soap, sanitizer, and masks to the prisoners and staff. *Id.* at 839-840.

11

Present Defendants note that like the BOP did in *Wilson,* the MDOC "promulgated several policies to deal with COVID-19 . . . ." (ECF No. 73, PageID.1193). They cite The MDOC Director's Office Memorandum 2021-26 ("DOM") effective at the time of the events in question, requires the use of masks; the screening of staff and visitors; a distance of a least six feet between individuals; limited group meetings; the designation of isolated spaces; the isolation of COVID-positive prisoners; an adequate supply of soap to prisoners; a distance of six feet between prisoners standing in line and eating in the dining hall; the sanitation of dining hall tables between shifts; the denial of transfers unless approved by the CFA Deputy Director; and a 14-day period of quarantine for prisoners in close contact with COVID-positive individuals. (ECF No. 39-7, PageID.527-537).

As in *Wilson,* the MDOC's measures show that reasonable precautions were taken to contain the spread of COVID-19. In addition, Plaintiff's allegations, taken as true, do not state that the individual Defendants' actions were unreasonable under those circumstances. Plaintiff faults the decision to leave him in the quarantined area one day after he came in "close contact," with an infected prisoner, despite that he tested negative for COVID-19. (ECF No. 1, PageID.8). He notes that a now-dismissed Defendant barred Plaintiff's release from quarantine, stating that his "hands were tied" by the policies implemented by Defendants McIntyre and Buskirk. (*Id.*) However, the DOM requirement that a prisoner who has been in "close

contact" with an infected individual must remain quarantined for 14 days, (allegedly implemented by Defendants McIntyre and Buskirk) is consistent with CDC guidelines at that time recommending a 14-day period of quarantine for individuals ("Close Contacts") exposed to but not positive for COVID-19. (ECF No. 39-7, PageID.529); *see* CDC Interim Guidance, (March 27, 2020) (ECF No. 39-5, PageID.389), CDC Interim Guidance, December 31, 2020) ("[C]orrectional and detention facilities should continue to use a 14-day quarantine period . . . ."), (ECF No. 39-12, PageID.651). The policies allegedly implemented by Buskirk and McIntyre, in conformance with CDC guidelines for the same period, were not unreasonable.

Plaintiff alleges that another, now-dismissed Defendant refused to transfer him out of quarantine before the 14-day period ended based on a policy implemented by Defendant Bussell. (ECF No. 1, PageID.8). But again, even assuming that the quarantine policies were imposed by Bussell, the restrictions set forth in the DOM were not unreasonable. Plaintiff also takes issue with being placed in an area of the prison regularly designated for inmates at a higher security level under the DOM policy stating that individuals under quarantine "shall be placed . . . in a designated isolation area as soon as resources permit regardless of their security level . . . .") (ECF No. 39-7, PageID.528-529). However, Plaintiff's failure to allege an actual injury (aside from stress-related symptoms) as a result of being placed in a higher

13

security level defeats this claim. *See Morris v. Metrish*, 1998 WL 246454, at *2 (6th Cir. May 5, 1998)(quoting *Estelle,* 429 U.S. at 103, *Hudson v. McMillian,* 503 U.S. 1, 8 (1992)) ("Morris' Eighth Amendment claim is frivolous because he did not show that the defendant's decision to classify him at a higher security level subjected him to 'unnecessary and wanton infliction of pain,' or that the defendant exposed Morris to conditions below 'contemporary standards of decency.'"). *See also Sanders v. Washington,* No. 1:21-CV-510, 2022 WL 575179, at *12 (W.D. Mich. Feb. 25, 2022) (Prisoner "fails to state an Eighth Amendment claim . . . for the [MDOC] policy that permitted mixing prisoners from different security levels on a COVID-19 outbreak unit."). Plaintiff does not allege that he was assaulted or otherwise placed in danger during his 14-day stint in the higher security level unit. As in *Wilson,* the policy to quarantine Plaintiff for 14 days at a higher security level where necessary to avoid exposing other prisoners to the virus constitutes a reasonable response to the COVID-19 pandemic.

In light of Plaintiff's failure to plead an Eighth Amendment violation, the Court need not determine whether the constitutional violation alleged was "clearly established" at the time of the events in question. *Jones*, 736 F.3d at 696; *Williams,* at *5 ("Because Defendant acted reasonably, Defendant did not commit a constitutional violation. The Court will therefore grant immunity to the Defendant.").

14

### E. Conclusion

For the reasons discussed above, **I RECOMMEND** that this Court **GRANT** Defendants Dr. Carmen McIntyre-Leon, Karmen Bussell, and Joshua Buskirk's Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), dismissing these Defendants **WITH PREJUDICE**. (ECF No. 73).

### III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this R&R. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

15

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this R&R to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: December 13, 2022

s/ PATRICIA T. MORRIS
Patricia T. Morris
United States Magistrate Judge